Good morning. Jolie Lipsig, appearing for Petitioner Appellant Lorenzo Cobbs, and I'd like to reserve a couple of minutes for rebuttal if I can. This case represents an egregious and fundamental violation of the Sixth Amendment right to the effective representation of counsel. It also sadly demonstrates the failings of our criminal justice system and correctional systems to deal adequately with the mentally ill. Mr. Cobbs, drug addicted and brain damaged, mentally ill and a repeat offender, was taken off psychotropic medication shortly before his release on parole from state prison. He was released without any preparation by mental health staff at the prison and without any arrangements for mental health care on the outside. Not unpredictably, less than a week after his release, he committed another offense, taking a gold chain from the neck of a teenager. Mr. Cobbs told his attorney he wanted to receive drug treatment. He also asked her about an insanity plea. Without conducting any investigation into Mr. Cobbs' mental condition or his correctional, medical and psychiatric history, counsel advised him to plead nolo contendere to a third strike offense instead of going to trial, as he had a right to do. Ms. Lipstick, how do we know those are the facts? They're undisputed. There's declarations from trial counsel in the record. I assume you're There's a letter, as I understand it. Excuse me? There was a letter from the lawyer who represented him. There's also a declaration that was submitted by her. And she said, we discussed briefly an insanity plea, and based on Mr. Cobbs' desire to try to get drug treatment, she told him it was impossible to plead insanity. And she based that unreasonably solely on the description of the crime. Do you take the position that an evidentiary hearing here in the district court is unnecessary? That's true. However, I did also ask the district court for an evidentiary hearing, which the district court denied. So I felt that the facts here were strong enough that it's not disputed that counsel conducted no investigation. In fact, the district court found that she didn't conduct an investigation. The district court found this was reasonable, however, because Mr. Cobbs, mentally retarded and mentally ill, failed to volunteer to counsel the relevant information. And, in fact, counsel did investigate, but after Mr. Cobbs had entered his plea. And she In the State proceedings, the ineffective assistance of counsel was not raised on direct appeal. Is that correct? No, it was raised, and the Court dismissed it because it was also raised in the attached habeas corpus petition. Did the district court of appeal, or was it the Supreme Court, that dealt with the habeas petition? Both, Your Honor. Did the district court of appeal give a reasoned decision on the ineffective assistance? No. It simply held petition for habeas corpus denied, as did the California Supreme Court. I prefer to determine whether that was an unreasonable application of clearly established law by the Supreme Court. We would have to give it an independent review. That's correct. And the independent review we would give, you say, would be based upon these declarations, because you assert that there is no conflict in the salient portions of them. That's correct. However, as I pointed out, I did ask the district court for an evidentiary hearing, which was denied. So I felt that the facts were strong enough, because the only issue is whether it was reasonable for counsel not to conduct an investigation under the circumstances. I just wanted to go back. It's never reasonable for an attorney to rely solely on what the client does or does not tell her. It's even more unreasonable when that client is mentally impaired, and counsel knew he had some impairments. In fact, she says in her letter that, you know, she had to try and explain the law to him over and over again. And he finally, she finally felt he did understand it, but... Well, that's kind of going too far. But she says that if she had known what she knows now, she would have entered the, they would have entered not guilty by reason. Well, she would have advised him to go to trial because he would have had nothing to lose, because what she didn't know was not about his mental health history. What she didn't know was that he was unamenable to drug treatment, because she didn't find that out until she had him evaluated after she gave him his advice. You also suggested that she was ineffective even after that, because she at that point had some information from the first doctor and might have been able to make a competence play or attempt to withdraw the play essentially. Absolutely. She actually committed two separate failures to investigate here. The first was by advising her client without even asking him about his history. And the second was that once she had this evaluation, this belated evaluation, it said that Mr. Cobbs had dementia, he was mentally retarded, and he suffered from moderate to severe... not volunteering the information about his mental health history, but seemed to be purposely withholding it. And because when he was asked by Dr. Klein, he essentially, he denied it, right? That's correct. But it doesn't matter. The case law is clear that even if a client lies to counsel, which Mr. Cobbs did not do here, I want to point out that the evidence is fairly clear that counsel told him when he went before his evaluation that if he had been hospitalized for psychiatric care, that that would defeat his amenability to drug treatment. She never asked him. She told him. And the evidence is clear from both doctors that evaluated Mr. Cobbs. He follows instructions. So counsel said don't tell the doctor if you have a history. She didn't tell him. She said I told him that if he had a history of mental health problems. All right, but she didn't tell him not to tell the doctor. Well, Dr. Coopers, who evaluated Mr. Cobbs later, said that Mr. Cobbs told him he was acting on counsel's instruction. I suppose that's a factual issue. I don't think it's determinative here, because even when a client tells an attorney something, the attorney has an independent duty to try and corroborate that. It happens all the time. Clients are not completely honest with their attorneys. The two cases that I found that seemed to most be most on point on this were Seidel, in which there was lots of reason to know this and where the court stressed that, and then the Babbitt case in which there was some inquiry made. So the question is what case law do you have that says that if she ñ I mean, she knew he was impaired meaning cognitively. She says she didn't have any reason to think he was mentally ill.  I'm sorry? He wasn't truly delusional. He seemed to know what was going on and so on. And the first doctor who examined him thought the same thing without looking at the history. So the question is what case law is there that suggests that she had an obligation, essentially knowing he was cognitively impaired, which it seems to me she did know, to make inquiry into his mental health circumstances without any specific reason to know about that. Well, they were talking about an insanity plea, and I'm sorry, I don't know if there's a specific case on point. However, the United States Supreme Court just keeps reaffirming the duty to investigate. In Wiggins v. Smith just last term, they, you know, held that counsel has to try and find out about sentencing options. Usually they're talking about mitigating evidence in capital cases. That's true. This is a third strike offense. My client is serving a life sentence now, and obviously it's not a capital case. But the duty to investigate doesn't just apply to capital cases. The question is investigate what? I mean, when you're doing a mitigating, when you're looking for mitigating evidence in a capital case, you have a pretty good idea where to start looking. But when you're dealing with a circumstance where you're looking essentially for either a defense to a crime or for a competence issue, you have to have some reason to start looking there. I mean, I assume you don't have to look into the mental health of everybody. So when do you have to start looking? When your client says I wasn't in my right mind when I committed this offense, when your client had been incarcerated at a medical facility, counsel certainly had a duty to inquire. All she had to do was ask him. Was he incarcerated at a medical facility? Yes, he was at the California medical facility, and he was there for psychiatric treatment. So that should have put her on notice. Dr. Klein's evaluation certainly put her on notice, that this man has severe problems, not just mild problems, not just personality disorder, but access one mental diseases and defects. Plus, he was a drug addict. So there's plenty of reasons to inquire below the surface. I think the case law, the cases I cited in my brief are clear that counsel has a duty to go beyond her client's mere silence, which is what happened here. And we'll give you a minute for rebuttal. Okay. All right. Thank you. Thank you. May it please the Court, Alan Yano representing the warden, Mr. McGrath. First, to answer one of the Court's questions, I do not recall any specific evidence in the record saying that counsel specifically did not investigate or did not ask. I think that counsel's statement is, I think counsel is interpolating something that is not necessarily there in the record. But there are a few additional points that I would like to make. First of all, when we deal with ineffective assistance of counsel, the first question that we look at is prejudice. As we pointed out in our brief, when the case was before the state courts, they argued the issue of prejudice from the standpoint of the attorney's declaration, that she did not know if he would have been agreeable to enter an insanity plea. When they go to the district court in the traverse for the first time, they put in this declaration saying that from the attorney saying, from the state habeas attorney, saying that I believe that my client told me that he would have been agreeable to enter an insanity plea. So I believe that the under settled, that under the provisions governing review of state court decisions, the focus should be on the declaration as it was submitted to the state courts. Now, in her. We're required to make an independent review because of the summary denied. What does that mean? Does that mean that we now determine what the facts are because there's been no determination of what those facts are by the state court? No, Your Honor. What I believe is, first of all, in terms of what you look at, you only look at what was before the state courts. And second, I think when you look at, you certainly do make, in one sense, you can make an independent determination, but you have to make that determination in terms of whether the state court's decision violates fairly established federal law or whether it involves an unreasonable determination of the facts. So I think you have to, there are certain assumptions that we have to make because the state court, the state court's decision here must be considered to be a denial on the merits. So this Court, I believe, must presume that the state courts reviewed the, all the material that was submitted to them, and the state court found that this declaration by Dr. Cooper's or does not, does not establish a basis to grant review. So that's actually a segue into the other issue, the substantive competence issue. Right? There's a second issue here, which is a due process competence issue. Yes, Your Honor. And as to that, we have Dr. Cooper's testimony that, or declaration that he was incompetent at the time that he pled. Would you characterize Dr. Cooper as having said that? I'm sorry, I didn't. Dr. Cooper's declaration said that the Petitioner was incompetent at the time that he pled guilty. That's right. Okay. So how then can we uphold the state court's determination that there was no due process violation in allowing him to plead guilty under those circumstances? Because I think this Court would have to contemplate that the state courts reviewed that declaration and they found that that report was not sufficiently probative to overcome the other evidence that he was competent at the time. But doesn't it – so this leads to a fairly complicated question about how it applies here. My understanding of State law is that under State law that factual allegations set forth in Petition are considered to be true unless – well, basically, the question is whether you establish a prima facie case for a lien. Is that right? Well, then that – pardon me? Is that correct statement of State law? That's – well, the issue is that's in terms of whether the Court would order a hearing. Okay. Well, it didn't order a hearing, right? That's right. So therefore, we have to assume that they took Dr. Cooper's statement to be true. No. No. What I'm saying is that what this Court could assume is that the – is that the state court – the state court could have done several things. They could have reviewed Dr. Cooper. They had to find Dr. Cooper's not credible without a hearing, right? In other words, Dr. Cooper said this. There was evidence in the record filed in support of the petition that he was – by a qualified medical doctor saying that he was incompetent at the time of the plea, right? Right. All right. How could the state court without a hearing simply – under its own rules discount the credibility of that statement? Okay. Well, there's several reasons. First of all, the – under California law, a medical report is not substantial evidence unless it's based on correct medical history and unless it has – unless legal conclusions – unless it's based on correct legal assumptions. The California Supreme Court could read this report and they could say this report – Well, there was certainly plenty of medical history. Pardon? There was certainly plenty of medical history. Right. Certainly has medical history. But when they say that Dr. Cooper is saying he was not competent, they look at Dr. Cooper – the reasons Dr. Cooper says that he was not competent. And the court could say, we can decide this based on the reasons that Dr. Cooper gave as opposed to what we see elsewhere in the record. And we find that this – But that's a credibility determination. That's not illegal. I mean, I thought you were going someplace that seemed productive, but now you're going somewhere else. No. I mean, if the question is that there is something that they could say in reading his report to show that he was applying the wrong standard, that would make some sense to me. But I'd have to look and see what that is. If what you're saying is that they could look at other evidence in the record – and I don't even know what that is. We can talk about that. But then they're making a credibility determination about the doctor. Can they do that? Yes, they can. And the reason they can do it is that there's – this is not credibility in terms of who has – who is telling the truth. The question is who is giving a reason, a basis for his decision. Is this doctor – is this report prima facie evidence that he really is incompetent? Because just because a doctor comes up with an ultimate conclusion doesn't mean that what is within his report is substantial evidence. I'm not sure if this is making sense to me as a theoretical matter, but what's the other evidence? Pardon me? What's the other evidence in the record? The other evidence is the colloquy that he had with the court that showed that he was well aware of what he was doing. All he said was yes, yes, yes, right? He said more than that. He went on this dialogue. He said he had – the court asked him if he understood it. We traced this dialogue in our brief, and we talked about it at some length. We submitted copies of the transcript to the court. Well, I have read it, so if you tell me what you're talking about without yelling at me, I'm sure I can figure it out. I'm sorry. I'm sorry, Your Honor. I get impassioned. I don't mean to do that. But the point – So what is the colloquy? Is it the colloquy where he said that I want to go to Delancey Street? That colloquy? Right. It was the most coherent set of sentences in the world. It was not the most coherent set of sentences I've ever read, actually. Well, maybe not, but on the same point, it shows that he understands what he wants to get, what kind of relief he wants. It shows that he understood. The evidence was that he could certainly make a directed attempt to get a certain outcome. There was certainly evidence that the court could rely on to do this. Now, this Dr. Cooper, he said, well, he couldn't rationally – he was advised to downplay his – he was incompetent because he was advised to downplay his mental health problems. But that's not the standard for competency. He certainly could make a rational – he certainly knew what the proceedings were. The standard is very low. Dr. Cooper's – or the state court could conclude that Dr. Cooper's was applying the wrong standard for Now, the other point I would like to address to Your Honor is that whether – is that the federal constitution does not tell the state court how they are to make – how they are to divide the burden within the state judiciary. If the California Supreme Court says we can decide this based on the papers that are before us, then the federal constitution does not prohibit the state courts from doing that. And apparently that's what the – that's what the California court of appeal and the – If we are going – I mean, there are two levels here. One is what the California courts say about what they're doing. And they seem to say that they are only determining whether there was a prima facie case made, i.e., they're not making credibility determinations. Right? And the second thing is that if we don't have a reasoned decision and we are doing a Delgado review, what facts are we assuming in that review? Are we assuming that every fact in favor of the Respondent or every fact in favor of the Petitioner or what? I was – In other words, if there has been no fact-finding and there has to be a – and the decision, as I believe this competence issue, has to rest on a fact-finding, what fact-finding do we assume? I think you would draw inferences in favor of the court's finding, in favor of the court's decision. So if there's a dispute, then I would – if there's a dispute, I would say that you would draw the inference. You are to assume that if there's a dispute, that without an evidentiary hearing, the State made a credibility determination or a determination of conflicting facts without having a hearing. Well, my point is that it's not really technically a credibility determination, because Dr. Cooper's demeanor and his appearance on the stand is not crucial. What is crucial here are the facts and the reasoning set forth in his report. And courts can do this – courts frequently evaluate medical reports without hearing testimony or can say that a medical report is not substantial evidence or not sufficient evidence to overcome other evidence without holding a hearing where they actually hear the doctor testify. You can do this based on the report itself. So – If you're out of time, do you want to summarize in 30 seconds? Or you may – Thank you, Your Honor. I'll submit it unless the court has questions. Thank you. Thank you. Just briefly, with regard to the issues that were just being discussed, it's very clear that the California Supreme Court didn't make a credibility determination, and if they did, they were not supposed to do that. There was no evidence to counter Dr. Cooper's conclusions in the record. And yet, if they disregarded them, which we don't know, we actually don't know what they decided. They might have found there was no prejudice. They might have found that counsel was reasonable for not even asking her client about his history. We just don't know. But this Court is not bound by anything the State court did under 2254d because the court made no fact findings. The only thing this Court needs to consider is whether its ultimate conclusion was reasonably – objectively reasonable. Do you agree, Ms. Lipsick, that we, in determining, when we do our own independent review, we look only at what was before the California Supreme Court and at nothing that might have supplemented that that was before the district court? I don't believe that's clear at all. I think that this Court first determines whether the State court decision was, you know, reasonable, which it wasn't, and then this Court – Well, you know that. Well, you review what was before it to make that determination. But then to reach the merits, which I'm asking this Court to do here, you can look at whatever was in front of the district court. And I just want to say something about the declaration of post-conviction counsel that Mr. Cobbs would not have entered a plea that was submitted before the district court for the first time. That doesn't do anything to lessen Mr. Cobb's argument. It was made in response to Respondent's claim that Mr. Cobbs would not have pled differently if counsel had told him he had no chance of drug treatment. So that doesn't un-exhaust the claim, as Respondent contended in the briefing. The question is whether without that statement there was sufficient evidence before the State court of prejudice, at least with regard to our deference obligations. Yes. Under Hill v. Lockhart, the Supreme Court held that the proper standard of prejudice for an ineffective assistance of counsel claim based on a failure to advise properly about a guilty plea was whether counsel would have changed her opinion had she done what we're claiming she was supposed to do. And that's not what Hill v. Lockhart said. It said that the question was whether there was a reason we were likely that he would have pled guilty. Now, Hill, that's not what Hill says, and I quoted it in my brief. Hill says that the issue is primarily informed by whether counsel would have changed her advice. And counsel says in the record before the State court, counsel says I don't know whether Mr. Hill, Mr. Cobbs would have changed his advice. But I would, I mean, would have changed his decision. But I know what I would have done, and I would have told him there was no chance of getting alternative sentencing. You have nothing to lose. So to me, people tell me what language in Hill you're referring to. Only because we had this case earlier. It's in the brief. Well, then tell us where. It's in the brief. Okay. Look at the brief and tell us where. Let me find it. I apologize. It seems I would start looking in the index. I will read you. It's on page 26 of my opening brief. In many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that the discovery of the evidence would have led to the plea, that's Hill v. Lockhart, 474 U.S.F. 59. And Mr. Cobbs plainly alleged that in a state court briefing. And counsel's declaration and statement that she would have changed her advice had she known that he'd been receiving psychiatric treatment, had she known that he was taken off drugs immediately before his release from prison, and all of that would have changed her mind. Mr. Cobbs is a very compliant defendant. It's in Dr. Cooper's report and Dr. Klein's report. There's no evidence that he would have insisted on trying to get drug treatment if he knew differently. I don't think there's enough in front of the state court to make that determination against the petitioner, even if it's not affirmatively established before the state court. So we're well over time. Thank you. Thanks very much. Next case for argument is Town v. Farwell. Please stand by.
judges: Reinhardt, Thompson, Berzon